```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FARAMARZ HEDVAT and KATRIN HEDVAT,    :
                                      :
                     Plaintiffs,      :
                                      :
            -against-                 :     MEMORANDUM AND ORDER
                                      :     23-cv-4101 (DLI)(LGD)
CHUBB NATIONAL INSURANCE COMPANY,     :
                                      :
                     Defendant.       :
-------------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

On February 7, 2023, Plaintiffs Faramarz Hedvat and Katrin Hedvat (collectively, "Plaintiffs") filed this breach of contract action against Defendant Chubb National Insurance Company ("Defendant") in New York Supreme Court, Nassau County, Index Number 6022259/2023, alleging it failed to pay an insurance claim submitted by Plaintiffs pursuant to an insurance policy Plaintiffs had with Defendant. On June 2, 2023, Defendant properly removed the action to this Court, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *See*, Removal Notice ("Notice"), Dkt. Entry No. 1 ¶ 5. On June 22, 2023, Plaintiffs filed their Complaint with the Court. *See*, Compl., Dkt. Entry No. 10. Defendant moved to dismiss the Complaint ("Motion") for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) ("Rule 12(b)(6)"). *See*, Mot., Dkt. Entry No. 14. Plaintiffs opposed. *See*, Pls.' Opp. to Mot. ("Opp."), Dkt. Entry No. 18. Defendant replied. *See*, Def.'s Reply ("Reply"), Dkt. Entry No. 20.

For the reasons set forth below, Defendant's motion is granted with prejudice.

# BACKGROUND[1]

## I. The Insurance Policy

At all times pertinent to this action, Plaintiffs were owners and residents of the premises at 7 Kennilworth Terrace, Kings Point, NY 11024. Compl. ¶¶ 1-2; Mot. at 2. Plaintiffs maintained an insurance policy (the "Policy") through Defendant effective from September 8, 2021, through September 8, 2022 that provided property coverage up to $9,469,000. Compl. ¶¶ 6, 16-17; Mot. at 3.

The Policy's coverage included "all risk of physical loss to your house or other property covered under this part of your Masterpiece Policy, unless stated otherwise or an exclusion applies." Def.'s Ex. 1 at B-4, Dkt. Entry No. 14-2. The Policy also provided for "extra coverages," including damages to landscaping caused by "certain kinds of perils," defined as "fire, lightning, explosion, civil disturbance, vandalism, malicious mischief, theft, and loss caused by a vehicle or aircraft." *Id.* at B-5. The Policy specifically excluded certain events from coverage, including "any loss caused by the faulty acts, errors, or omissions . . . in planning, construction, or maintenance" ("Faulty Construction Exclusion"), or "any loss caused by earth movement including . . . any expansion, contracting, sinking, rising, settling, or shifting of the earth, soil, or land" ("Earth Movement Exclusion"). *Id.* at B-12 - B-14.

The Policy required covered persons to: (1) notify the insurance company or their agent of the loss "as soon as possible"; (2) "take all reasonable means that are necessary to protect property from further loss or damage"; (3) "prepare an inventory of damaged personal property" and "[a]ttach bills, receipts, and other documents to support your inventory"; and (4) display the property to the insurance company when asked. *See*, Def.'s Ex. 1 at Y-5.

---

[1] The following facts are taken from the Complaint and any documents of which the parties are presumed to have knowledge and are accepted as true as they must at this stage of the case.

## II.     The Loss

In February 2022, Plaintiffs' driveway became flooded and water backed up into the home. Compl. ¶ 19; Mot. at 2. In or about March 2022, Plaintiffs hired Cesspool Pro to investigate and inspect the underground pipes and drywells on the property to determine the cause of the flooding and water backup. Compl. ¶ 20; Mot. at 2. In April, Cesspool Pro verified that the pipes connecting two of the drywells had collapsed, causing a drywell to overflow; neither party has stated that Cesspool Pro offered a reason for the collapse. Compl. ¶¶ 9, 21; Mot. at 2. Plaintiffs then hired NYC Remodeling Inc. ("NYC Remodeling") in April[2] to excavate the property, repair the pipes, and replace the affected drywells, during which activity "[w]alkways, pavers, sprinklers, masonry, and landscaping" on the property were damaged. Compl. ¶¶ 22-23; Mot. at 2-3. It is not clear when the repairs were completed.

## III.    The Insurance Claim

On or about May 16, 2022, Plaintiffs notified Defendant about the damage and repairs and submitted a claim for reimbursement pursuant to the Policy in the amount of at least $1,749,885. Compl. ¶¶ 24, 26. After receiving the claim, Defendant hired H2M architects + engineers ("H2M") to investigate the cause of the backflow. *See*, Mot. at 5. H2M did not conduct a site visit because all repair work had been completed, but did review "field measurements, visual observations, and information provided by [Plaintiffs], Chubb, and any other sources referenced in [its] report." *Id.* H2M reported that "[t]he area surrounding cesspools showed signs of settling," which "can be caused when a pipe is cracked or a joint is not properly installed." *Id.* H2M opined that "the failure of the septic systems resulting in backup water inside the residence is consistent with typical failures resulting from a blocked/collapsed pipe." Mot. at 6. "H2M was unable to identify the

---

[2] Defendant states that they were hired in May 2022. *See*, Mot. at 2.

cause of the pipe collapse," but since "[p]ipe blockage and collapses are typically found in aging systems, . . . the fact that this system was installed recently would tend to indicate an installation or manufacturer defect in the pipe." *Id.* H2M agreed with the finding of Plaintiffs' contractor, Cesspool Pro, that "the blocked pipe caused the backup inside the house." *Id.* On August 12, 2022, Defendant denied Plaintiffs' claim in its entirety, relying on the H2M report and Defendant's interpretation of the Policy. Compl. ¶ 27; Mot. at 6.

Plaintiffs commenced this action solely for breach of contract, alleging that Defendant failed to indemnify Plaintiffs for their loss contrary to the Policy. Compl. ¶¶ 30-35.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citations omitted). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *See also*, *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Pleadings that are no more than conclusions are not entitled to the assumption of truth.") (internal quotation marks and modifications omitted).

4

The court's duty "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010).

While the Court generally considers only facts alleged in the complaint or contained in documents attached or incorporated by reference, other facts and documents can "be appropriately considered if [they are those] upon which the complaint solely relies and [are] integral to the complaint." *Lohan v. Perez*, 924 F. Supp.2d 447, 453 (E.D.N.Y. 2013) (modifications, quotations, and internal citation omitted). "The Court may properly consider 'documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp.3d 377, 399 (E.D.N.Y. 2018) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). In this case, the Court properly may consider the Policy and reports issued by Cesspool Pro, NYC Remodeling and H2M.

In insurance contract disputes arising out of diversity, a federal court applies the substantive law of the state in which it resides, here New York law. *See*, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 416 (1996).

## DISCUSSION

Defendant moves to dismiss the Complaint for failure to state a claim arguing that: (1) Plaintiffs failed to notify Defendant timely pursuant to the Policy; (2) Plaintiffs' loss is excluded from the policy under the Faulty Construction Exclusion; and (3) the alleged damages to the walkway are precluded from coverage under the Earth Movement Exclusion. Plaintiffs counter that: (1) they did notify Defendant timely or, in the alternative, the reasonableness of any delay is a question of fact to be determined by a jury; (2) Defendant omits the key provision that applies to their claim and, thus, the Faulty Construction Exclusion does not preclude coverage; and (3) the

Earth Movement Exclusion does not preclude coverage because the damage was due to the pipe failure, not settling.

**I.      Notice Provision**

Defendant contends that Plaintiffs' failure to comply with the notice provision of the Policy is an independent ground for dismissal. The provision required Plaintiffs to "notify us or your agent of your loss as soon as possible." Def.'s Ex. 1 at Y-5. The Policy also required Plaintiffs to take reasonable steps to protect the property from further damage, prepare an inventory of damaged property and attach supporting documentation, such as bills and receipts, and show the damaged property when asked. *Id.* Defendant contends that Plaintiffs did not report the loss "as soon as possible." Mot. at 14. Plaintiffs counter that there was no delay, and, if there was delay, it was reasonable and, in any event, factual issues exist precluding dismissal. Opp. at 12-18.

"Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." *Sparacino v. Pawtucket Mut. Ins. Co.*, 50 F.3d 141, 143 (2d Cir. 1995). "The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." *Id.* In the context of a provision that requires notice "as soon as possible," the insured must notify the insurer "within a reasonable time in view of all of the facts and circumstances." *Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co.*, 421 F. App'x 52, 56 (2d Cir. 2011) (citing *Eagle Ins. Co. v. Zuckerman,* 301 A.D.2d 493, 495 (2d Dept. 2003)).

"Where there is no excuse or mitigating factor, relatively short time periods of delay are deemed unreasonable as a matter of law." *Cambridge Realty*, 421 F. App'x at 57. How much time is "reasonable" varies from case to case, but delays even as short as 10 days have been found

6

to be unreasonable. *See*, *Am. Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993) (collecting New York cases holding that delays ranging from as short as 10 to 26 days were unreasonable). The determination of the time of discovery of a claim is an objective test "based on the conclusions that a reasonable person would draw from the facts known to the insured." *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Cos.*, 748 F.2d 118, 122 (2d Cir. 1984) (citing *Sec. Mut. Ins. Co. of New York v. Acker-Fitzimons Corp.,* 31 N.Y.2d 436, 441–43 (1972).

It is undisputed that the date of notice is May 16, 2022. However, the parties dispute the date of discovery of a possible claim. Defendant contends that "Plaintiffs were aware of the alleged damage, and, therefore, a possible claim, as of February 2022," when the flooding first occurred. Mot. at 15. Plaintiffs contend that: (1) they were aware of "some type of a backup event in February 2022;" (2) they hired Cesspool Pro, which discovered the collapsed drywells; and (3) then hired NYC Remodeling in April to conduct repairs. Opp. at 15. Notably, no specific dates are provided by Plaintiff as to any of these events.

The Court concurs with Defendant that the flooding in February should have put Plaintiffs on notice of a possible claim at that time. Plaintiffs waited until March to hire Cesspool Pro to investigate the cause of the flooding. Even if Plaintiffs may not have been aware of a possible claim at the time of the flooding in February, they certainly should have been aware after Cesspool Pro's investigation, which, at the latest, was sometime in April. Assuming, arguendo, that Cesspool Pro's report was not enough to put Plaintiffs on notice, Plaintiffs' decision in April to hire NYC Remodeling to excavate the property with heavy machinery was enough to give Defendant notice of a possible claim. While neither party states when in April NYC Remodeling conducted the repairs, viewed in the light most favorable to Plaintiffs, that may have been April 30th, which means there was at least a 16-day delay before Plaintiffs notified Defendant on May

16, 2022, and only *after* the work was completed when it was impossible for Defendant's expert to view the initial damage caused by the flooding and assess causation.

Plaintiffs contentions that any delay was reasonable because the extent of the damage was not clear until the contractors performed their work, and they notified Defendant "[a]fter carefully reviewing and digesting the contractors' findings" are unavailing. Opp. at 16. Neither reason is one of the mitigating circumstances nor excuses that New York courts typically recognize when permitting delayed notification. Permitted circumstances include the "lack of knowledge that an accident has occurred or a reasonable belief in nonliability," neither of which apply here. *See*, *White v. City of New York*, 81 N.Y.2d 955, 957 (1993). Plaintiffs' purported diligence in assessing the contractors' findings also is unavailing. When an insurance policy provision requires losses to be reported "as soon as practicable" or, as here, "as soon as possible," and "the insured indefinitely reserves to itself the determination of whether a particular loss falls within the scope of coverage[,] it does so at its own risk." *Power Auth. v. Westinghouse Elec. Corp.*, 117 A.D.2d 336, 340 (1st Dept. 1986).

As Plaintiffs argue, the determination of reasonableness of delay ordinarily is a matter for trial. *Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1430 (S.D.N.Y. 1991) (quoting *Eveready Ins. Co. v. Chavis*, 150 A.D.2d 332, 333 (2d Dept. 1989)). "However, absent an excuse or mitigating circumstances, the issue poses a legal question for the court." *Eveready*, 150 A.D.2d at 333. The circumstances here present a question of law for the Court to decide.

Plaintiffs have offered no excuse or mitigating circumstance as to why they did not notify Defendant or their agent of the loss as soon as possible, certainly before May 16th, in accordance with the Policy. Even in a light favorable to Plaintiffs, the Court cannot conclude that Plaintiffs notified Defendant of the loss "as soon as possible," especially when they took affirmative steps

to hire contractors to repair the damages, permanently altering the property, prior to giving notice at least 16 days later. Notification occurred only after repairs were complete. At that juncture, Defendant was deprived of the opportunity to assess accurately and effectively the cause of the flooding and/or the extent of the damage to the property. The Court cannot find any justifiable reason for Plaintiffs' failure to notify Defendant at any one of *four* critical points in the scenario here: (1) as soon as the flooding occurred in February; (2) in March, when Cesspool Pro was called in to assess the cause of the flooding and extent of the damage; (3) when Cesspool Pro released its report in April; or (4) *before* Plaintiffs hired NYC Remodeling in April to fix the damage. As stated in the Complaint, NYC Remodeling was hired in April to excavate the property, repair the pipes, and replace the affected drywells, during which activity "[w]alkways, pavers, sprinklers, masonry, and landscaping" on the property were damaged. Compl. ¶¶ 22-23. No explanation for the delay has been offered by Plaintiffs. As such, the Court is constrained to find that, as a matter of law, the delay was not reasonable and contravened the plain language of the Policy. Accordingly, Defendant's motion to dismiss is granted.

I.  **Other Grounds for Dismissal**

Defendant seeks to dismiss the Complaint on the grounds that the Faulty Construction Exclusion precludes the claim because the pipe collapse was caused by installation or manufacturer defect, and the Earth Movement Exclusion precludes a claim because the damaged walkways were caused by settling of the earth. *See*, Mot. at 1-2. The Court need not decide the merit of these grounds for dismissal because the failure to comply with the Policy's notice provision precludes reimbursement under the Policy as a matter of law as discussed in detail above.

9

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted with prejudice.


SO ORDERED.

Dated:   Brooklyn, New York
           March 31, 2024

/s/
DORA L. IRIZARRY
United States District Judge
